SHARP PAPER & SPECIALTY CO., INC., Plaintiff and Appellee;
v. GASPAR FERNÁNDEZ, Defendant and Appellant.

No. 8426. Argued May 21, 1942.—Decided July 8, 1942.

642

*Villamil & Santana Becerra* for appellant. *Dubón & Ochoteco* and *Otero Suro & Otero Suro* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is a suit involving the collection of a sum of money in this Island which was ordered to be paid by a judgment by default rendered by the clerk of a court of the State of New York, United States of America.

The complaint was filed by Sharp Paper & Specialty Co., Inc., a corporation organized under the laws of the State of New York, with its domicile in the city of the same name, against Gaspar Fernández, a resident of San Juan, Puerto Rico. The complaint averred that on September 17, 1932, in case number 37714, brought by the corporation against defendant herein in the Supreme Court of the State of New York for the County of New York, United States of America, which is a court of record, final judgment was rendered, adjudging the defendant to pay to the plaintiff $2,734.48, interest thereon, and $21.60 for costs and other disbursements, a copy of which was attached to the complaint; and that said judgment has not been satisfied in whole or in part, notwithstanding the efforts made by plaintiff to collect from defendant. The complaint was verified.

After being served with the summons, defendant filed his answer. He denied the existence of the judgment mentioned in the complaint, and averred that if it did exist, it would be null and void, for the reason that he was never served with notice in that case nor did he know anything about it until he was summoned in the present action. He likewise interposed several special defenses.

The cause was tried. Oral and documentary evidence was submitted, and on December 26, 1940, judgment was entered ordering defendant to pay to the plaintiff the amount of $2,734.48, interest thereon at six per cent per annum from September 17, 1932, until final payment, $21.60 for costs and disbursements in the suit that gave rise to the judgment which is the basis of this action, and $100 for costs and attorney's fees.

644

Feeling aggrieved by that judgment, the defendant appealed and he urges that the lower court erred in admitting in evidence a certain deposition; in deciding that the plaintiff had proved its case and that it could not take judicial notice of the laws of the State of New York; in holding that the clerk of the Supreme Court of New York was authorized to enter the judgment which he entered; in concluding that defendant was *de facto* personally served; in holding that the summons which appears in the judgment roll was valid as well as the rest of the proceedings; and in including in the judgment annual interest at six per cent from the date in which it was recorded at New York in 1932.

■ At the beginning of the trial plaintiff offered in evidence the judgment roll of case number 37314–1932 of the Supreme Court of the State of New York for the County of New York, which was admitted without objection.

Plaintiff then called to the stand José Luis Hernández, clerk of the court, who identified a certain document which was shown to him as a mandate issued in this case, appointing Leonard R. Hanower, of New York, for the purpose of taking the testimony of Bernard Sharp, of the same city, including the direct examination, cross-examination, and the answers. Plaintiff then offered in evidence the deposition and defendant objected because it was not enclosed in a sealed envelope and it had been offered as an open document. The clerk explained that he received the document in a sealed envelope, which he opened and attached the contents thereof to the record. The envelope disappeared.

The court admitted the deposition over the objection raised by defendant, who stated in the record that he was also opposed to its admission because " . . . the document on its face does not show that it was legally executed, since it does not appear anywhere that the person who took the deposition, namely, Hanower, is duly authorized to administer oaths in New York, nor does it appear that said Han-

ower stamped his seal thereon nor is his signature legally countersigned by the Secretary of State or the County Clerk of the Supreme Court of the State of New York, who are charged with the duty of authenticating said signatures...."

After full discussion by the parties, the court disposed of the incident. as follows:

"The court, having in mind the decision of the Supreme Court in the case of *Hermida & Palos* v. *Gestera,* 23 P.R.R. 92, and the fact that the commission issued by this Court to the appointed commissioner Mr. Leonard R. Hanower was returned, duly signed by said commissioner, to the office of the clerk of this court, thinks that the mandate has been sufficiently identified for the purpose of its admission in evidence. The same has been held in California and buttressed by the weight of authorities as it appears in 9 Cal. Jurisprudence 420; therefore the objections are overruled and the document marked Exhibit No. 2 for plaintiff is admitted."

The commission in this case was issued by the district court to Leonard R. Hanower, 58 West, 40th Street, New York City, who was appointed to take the testimony of Bernard Sharp, 220 Fifth Avenue, New York City, and it was sent to him together with the direct examination and the cross-examination. The deposition was taken by Hanower in New York on August 19, 1940. The witness read it, signed it, and according to the commissioner, as attested by the latter's signature, took his oath. There is no seal.

In our judgment, even though the lack of the seal is significant, and it would have been better that the clerk of the court had kept the envelope within which he received the documents attached to the deposition, we do not think that the lower court erred in admitting the deposition in evidence.

Section 500 of the Code of Civil Procedure, 1933 ed., which is equivalent to §138 of the Law of Evidence of 1905, expressly provides that if the commission to take the deposition of a witness were issued to any place within the United States, it may be directed to a person agreed upon by the

parties or, if they do not agree, to any judge or justice of the peace or commissioner selected by the court or judge or justice issuing it. Section 502 of the same code also provides that the commissioner shall certify the deposition to the court, in a sealed envelope, directed to the clerk, and forwarded to him by mail or other usual channel of conveyance.

The law does not require greater authenticity, for the reason that due to relationship previously existing between the court and the commissioner, the situation which arises is different from that created by any ordinary notarial document executed in any state or territory of the Union which might be isolatedly offered in a court of Puerto Rico.

■ The second and third assignments of error are jointly argued. As we have indicated, they contend that the lower court erred in deciding that the plaintiff had proved her case and therefore the New York judgment was final when this suit commenced, and that said court likewise erred in holding that it could not take judicial notice of the laws of the State of New York related to this matter.

The law relative to judicial notice is contained in §398 of the Code of Civil Procedure, 1933 ed.—§36 of the Law of Evidence of 1905. That section does not provide that the courts of this Island shall take judicial notice of the laws of the states of the Union.

The authority upon this matter has been well stated in Jones on Evidence, 4th ed., p. 970, §504, as follows:

"In some of the states, the legislatures have enacted statutes enabling the courts to take judicial notice of the laws of other states of the Union; and in a few jurisdictions such notice is taken without legislative authorization. In states wherein this practice is not sanctioned by statute or judicial decision, the statutes and laws of another state must be proved as matters of fact."

In the same treatise, page 205, §118, it is said:

"If the litigant desires to invoke the statutes or laws of another state, he must plead, and be prepared to prove them . . ."

Such is the general rule, but there exist some exceptions to it, and this case falls within one of them, as it is said in 20 Am. Jur. 70, 72–73:

"In the absence of a statute of the forum requiring them to do so, state courts as a general rule decline to take judicial notice of either the common law or the statutory law of another state; . . . In those instances where one state recognizes acts done in pursuance of the laws of another state, its courts will take judicial cognizance of those laws, so far as it may be necessary to determine the validity of the acts alleged to be in conformity with them.

". . . A modification of the rule requiring proof of the laws of another state has been made in order to effectuate the provisions of the Federal Constitution and Acts of Congress requiring full faith and credit to be given in each state to the public acts, records, and judicial proceedings of other states and prescribing the means of authenticating court records. Accordingly, when the judgment of another state is pleaded and the record duly certified from that state, the courts will take judicial notice of the local laws of the state from which the record came."

It is clear, then, that the lower court erred in resolving that it could not take judicial notice of the laws of the state of New York for the purpose of deciding the questions of law raised by defendant with respect to the judgment entered in said state.

However, even though the court held as hereinbefore stated, as a matter of fact it acted as if it had taken judicial notice of the laws involved. Therefore, it did not incur in prejudicial error.

With respect to the main issue raised, namely, that the judgment was, as averred in the complaint, final, said laws sustain the court's decision, for §557 of the Civil Practice Act of the State of New York provides that no appeal may be taken from a judgment by default of defendant, as it was the case herein, in the following instances:

"A right to appeal shall exist as follows:
"1. A party aggrieved may appeal in a case provided by law. He may not appeal from a judgment or order rendered or made

upon his default unless an appeal therefrom be expressly authorized by law; . . ."

Appellant has not cited any authority to the contrary.

■ The fourth assignment of error involves several issues. It holds that the Clerk of the Supreme Court of New York for the County of New York had no authority to enter a judgment without the intervention of the court because this action was a civil *ex delicto* suit, because it was designed to collect an unliquidated amount, and because the judgment was entered for an amount greater than the amount requested in the complaint.

According to the judgment roll submitted in evidenc, in the complaint filed in New York it was generally averred that plaintiff and defendant entered into a written agreement by virtue of which defendant was to become plaintiff's agent for the purpose of selling merchandise in Puerto Rico, Santo Domingo, and Venezuela for a period of one year, starting on October 15, 1928, until the contract should be canceled by any of the parties, provided a sixty-day notice was given; that defendant entered into his work on or about October 15, 1928, and continued until April 1, 1932; that on March 13, 1930, plaintiff authorized defendant, as her employee, to collect for her, bills and money that were owing to her in said places, under the express agreement that the total amount of said moneys and uncollected bills were the exclusive property of the plaintiff, and would be sent to her immediately, the agent being responsible to plaintiff as trustee; that the agency was ended on April 1, 1932, by the plaintiff; that from March 13, 1930, to April 1, 1932, defendant collected and received in trust for plaintiff the amount of $2,661.31, which amount he has never paid nor delivered, rather, as it was textually said in the complaint, "wrongfully and in violation of his aforesaid trust converted said moneys to his own use."

Appellant alleges that he was thereby charged with the commission of a crime, and that as a consequence thereof the clerk had no authority in law to enter the judgment. In support of his contention he cites §§485 and 826 of the Civil Practice Act of New York, and the decision in the case of *Fayerweather* v. *Tucker*, 11 N. Y. Supp. 39, in which it was said:

"Where an action is predicated on certain acts of defendant, alleged to have been done with fraudulent intent, judgment by default cannot be entered by the clerk without the intervention of the court, as provided by Code Civil Proc. N. Y. secs. 420, 1212, in certain cases, since section 549, subd. 4, provides that, where there is an allegation of fraud, plaintiff cannot recover unless he proves the fraud at the trial."

However, that decision, which is evidently favorable to appellant, was reversed by the decision in the case of *Steamship Richmond Hill Co.* v. *Siager et al.*, 52 N.Y. Supp. 985, 988. In this case the Appellate Division of the Supreme Court of New York, First Department, said:

"There is nothing in section 549 of the Code that at all affects this question. The provision of subdivision 2 of that section that, 'where such allegation is made, the plaintiff cannot recover unless he proves the same on the trial of the action,' plainly applies only to a case where a defense is interposed and a trial becomes necessary. Upon a default in the pleading, whether the judgment is to be entered by the clerk, or the amount is to be ascertained by a writ of inquiry or a reference, or by the court upon an application for judgment, the defendant, by failing to answer, admits the facts alleged in the complaint, and that the plaintiff is entitled to judgment demanded. There can be no trial of the action because there is no issue to try. By the service of the verified complaint upon the defendants, they were apprised of the demand made upon them by the plaintiff, and the amount of the judgment which would be entered against them in case of their failure to answer the complaint. No proof of the cause of action, the complaint being verified, was required by the Code to entitle the plaintiff to judgment where the defendants had suffered a default, and had failed to deny the allegations of the complaint or interpose a defense; and, upon the

neglect of the defendants either to answer or demur, no trial of the action was possible. If the case was one within section 420 of the Code, the plaintiff would be entitled upon such default to have the judgment entered in his favor by the clerk. In case the action was not one within that section, then he would only obtain judgment upon application to the court; but in neither case would there be a trial, and the provision that, before the plaintiff would be entitled to judgment, he must prove the facts required to be alleged in the complaint by section 549 of the Code, related only to a case where, by the action of the defendant in interposing his defense, the trial had become necessary. The contrary seems to have been held in the case of *Fayerweather* v. *Tucker* (Sup.) 11 N.Y. Supp. 39; but that was a special term decision, and we do not think it correctly decided. In certain cases the Code requires the plaintiff to prove his cause of action before he can have a judgment by default, as in the case of an action for divorce, or when the summons is not formally served; but the fact that such special direction is necessary shows that, where there is no such requirement, such proof is not essential.''

Appellant admits that this decision is adverse to him, but he insists that his contention is correct, alleging that in the above case no decision was reached with respect to whether the claim was liquidated or unliquidated, and in support of his theory he cites the case of *In re Scharmann*, 63 N.Y. Supp. 267, in which it was decided:

''Code Civ. Proc. secs. 420, 1212, providing that in actions for breach of an express contract, if defendant had made default in appearing, and plaintiff has proven service of process, etc., the clerk must enter final judgment in his favor, gives the clerk no authority to enter judgment for plaintiff in an action for unliquidated damages without application to the court.''

The citation does not go as far as appellant contends, for the reason that it refers to tort actions, whereas in this case it is a question of the reimbursement of amounts of money collected by defendant for plaintiff, which amounts defendant seized for his own use in violation of the contract existing between them.

It only remains for us to consider the question raised by the recording of the judgment for an amount greater than

the one averred in the complaint, as contended by appellant. In our judgment his position is also untenable.

Section 481 of the Civil Practice Act of New York, cited by appellant, is sufficient authority for the clerk of the New York court to record the judgment the way he did, that is, including accrued interest. We are familiar with the judgment. The law may be stated as follows:

"A judgment for a sum of money rendered in a court of record or not of record, or a judgment rendered in a court of record directing the payment of money, bears interest from the time when it is entered. But where a judgment directs that money paid out shall be refunded or repaid, the direction includes interest from the time when the money was paid, unless the contrary is expressed."

■ The fourth error, then, was not committed. The fifth assignment of error states that the lower court erred in holding that the evidence submitted proved that defendant had been personally served in New York.

With regard to this question, the evidence submitted was conflicting, and since it has not been shown that the lower court was moved by passion, prejudice, or partially in weighing it, nor has it been shown that the lower court committed manifest error, its decision must be sustained.

■ The sixth assignment of error alleges that the service was null and void because it was made by a real party in interest. Personal service upon defendant was made by Bernard Sharp, president and guiding light of the plaintiff corporation, a member of its board of directors and a shareholder of the same. Of this there can be no doubt, as Sharp himself testified in New York; notwithstanding, such procedure is valid, according to the weight of authority in New York, because Sharp was not a real party in interest, in the sense that the word "party" is used in the act.

"Section 220 of the Civil Practice Act, which provides, 'The summons may be served by any person of the age of 18 years or over, other than a party to the action,' does not,

in our view, preclude service by an officer or director of a plaintiff corporation,'' said the Supreme Court of New York in *Outdoor Supply Co.* v. *Westhome Sec. Corporation,* 249 N. Y. Supp. 571, and went on: ''As was said in *Woods* v. *De Figaniere,* 24 N. Y. Super Ct. 607, at page 611, 'All the provisions of the Code as a general rule, when treating of parties to the action, mean only the parties to the record, whether nominal parties, or the actual parties in interest.' This decision was cited with approval in *People* v. *Mutual Gas Light Co. of Brooklyn,* 74 N. Y. 434, at page 435. In the latter case the Court of Appeals, in determining the meaning of the word 'party' in connection with examination before trial, said: 'the word ''party'', as used in this and previous similar statutes, has an unmistakable meaning. It means a plaintiff or defendant, and cannot be extended to the officers, servants, agents and employees of the parties, whether such parties be corporations or natural persons.' ''

The seventh assignment of error contends that the lower court erred in sustaining generally the validity of the proceedings held in New York.

Appellant himself states in his brief that the seventh assignment of error is a compilation of the matter alleged in the other assignments of error. That being the situation, and in view of what we have already said, there is no need to discuss it.

The eighth and last assignment of error holds that the lower court erred in fixing the interest rate and the time from which said interest was to be assessed.

As we know, the lower court fixed the legal interest rate —six per cent per annum—to be paid from September 17, 1932, which was the date on which judgment was entered in New York, but appellant contends that it was authorized to fix said interest rate only from the date in which the complaint was filed in this Island, namely, August 22, 1939.

The New York judgment merely orders the payment of interest without determining the rate. In his brief, appellant goes only to the extent of stating the alleged error and his opinion about it, without submitting any authorities in support thereof. Appellee merely says in his brief: "We will not discuss the eighth assignment of error because we believe that it is wholly unimportant for the purposes of this appeal."

Taking everything into consideration, the attitude of the lower court seems logical. The obligation to pay interest existed, and its fulfillment was claimed in this Island. In the prayer of the complaint it was requested that interest be fixed at six per cent per annum from September 17, 1932, and the court complied with such request in the judgment rendered. Such interest rate is legal not only in Puerto Rico, but in New York as well. Section 370, Article 25, General Business Law of 1909, Thompson's Laws of New York, 1939, Part 1, page 1076. No error was committed.

In virtue of the foregoing, the appeal must be dismissed and the judgment of the lower court affirmed.

Mr. Justice de Jesús did not participate herein.